```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NELSON QUINTANILLA, ALEJANDRO
AMAYA, ALEX AMIR, AREVALO
MAYNOR FAJARDO, WALTER GARCIA,
JOSE L. MARTINEZ, PRACELIS MENDEZ,
OSMAR W. PAGOADA, JAVIER
QUINTANILLA, EDWIN RIVERA,
CARLOS ESCALANTE, KEVIN GALEANO,
LERLY NOE RODRIGUEZ, JOSE VEGA
CASTILLO, JUAN QUINTEROS, MARCOS
TULIO PEREZ,
```

       Plaintiffs,       **REPORT AND**
                   **RECOMMENDATION**
   -against-            CV 09-5331 (SJF) (AKT)

```
SUFFOLK PAVING CORP., SUFFOLK
ASPHALT CORP., LOUIS VECCHIA,
CHRISTOPHER VECCHIA, HELENE
VECCHIA AND JOHN DOES 1-5,
```

       Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, United States Magistrate Judge:**

   Before the Court on referral from District Judge Feuerstein is the defendants' motion to dismiss the complaint and compel arbitration [DE22] and the plaintiffs' cross-motion to amend the complaint [DE26].[1] Having reviewed all of the papers on both motions, I am recommending to Judge Feuerstein that the defendants' motion be denied and that the plaintiffs' motion be granted as set forth below. This determination would allow the plaintiffs to file the Revised Proposed Second Amended Complaint, annexed as Exhibit 3 to the Goldberg Affirmation [DE30], subject to the defendants' objections to the argument raised for the first time in the

---

[1] This case was originally assigned to Magistrate Judge Wall, however Judge Wall recused himself from the case on February 3, 2011 and the pending motions were referred to me for adjudication. *See* DE 33.

plaintiffs' reply papers. That argument, as discussed later in this Report and Recommendation, involves plaintiffs' request to remove paragraph 106 of the proposed second amended complaint and to replace it with a claim asserting third party beneficiary rights under state funded contracts.

## I. BACKGROUND

The plaintiffs commenced this lawsuit on December 8, 2009, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law, and common law claims of breach of contract, quantum meruit and unjust enrichment. The plaintiffs allege that during their employment with the corporate defendants, they were not paid all the wages owed to them, including overtime pay, and that some of them were retaliated against by the defendants for complaining about the underpayments. Some, but not all, of the plaintiffs are or were members of the Road and Heavy Construction Laborers' Union Local No. 1298 and International Union of Operating Engineers Local 138.

The defendants move to dismiss the action pursuant to the Federal Arbitration Act (the "FAA"), arguing that arbitration of the dispute is compelled under several Collective Bargaining Agreements ("CBAs" or "Agreements"). The plaintiffs argue that arbitration cannot, as a matter of law, be compelled by the CBAs, and they cross-move to amend the complaint to add additional claims and to correct certain factual assertions.

## II. DISCUSSION

**A.    The Motion to Dismiss:**

As noted, the defendants move to dismiss the complaint and compel arbitration pursuant to clauses set forth in several CBAs. *See* DE[23-1], Zabell Decl., Exs. B, C, D & E. I note, as a threshold issue, that seven of the plaintiffs are not members of a union and not bound by the

2

CBAs in question. The defendants do not challenge the assertion that some plaintiffs are not union members and do not put forth any argument as to how or why they would be compelled to arbitrate their claims if the CBAs did mandate arbitration. Thus, the motion to dismiss and compel arbitration must be denied as to the non-union plaintiffs without reference to the CBAs.

As to the union plaintiffs, the defendants have provided copies of four CBAs that they say mandate arbitration of the plaintiffs' claims. They are as follows. The Agreements with the Road & Heavy Construction Laborers' Union Local #1298 for the periods June 1, 1999 to May 31, 2003, and June 1, 2003 to May 31, 2007 provide, in the sections captioned "ARTICLE IX/ Labor Dispute:"

> *Section 1.* Any and all complaints, grievances, controversies or disputes between the union and the employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other parties signatory to this industry-wide collective bargaining Agreement, or with respect to any term or condition of employment hereunder (herein collectively referred to as a "dispute") shall be referred to the union shop steward and the appropriate employer representative on the job site.
>
> *Step 1:* If the union shop steward and an employer representative are unable to resolve the dispute, the matter shall be referred to the union business agent and the appropriate employer representative involving the job in question.
>
> *Step 2:* If the union business agent and appropriate employer representative are unable to resolve the dispute within twenty four (24) hours thereafter, the matter shall be referred to the Union Business Manager and the Association Representative for final disposition.
>
> *Step 3:* Should the union business manager and the employer representative fail to agree on the resolution of the dispute, the matter shall be submitted to the New York State Employment Relations Board for an appointment of an arbitrator in accordance with the rules and regulations.

DE[23-1], Zabell Decl., Ex. B at 37-38; Ex. C at 42-44.

The Agreements go on to provide for the powers of the arbitrator and other details of the

3

arbitration. *See id.* The Agreement between Road & Heavy Construction Laborers' Union No. 1298 effective June 1, 2007 through May 31, 2012 provides substantially similar terms, in slightly different formatting, stating, in Article XI/Labor Dispute, that:

> *Section 1.* Any and all complaints, grievances, controversies or disputes between the union and the employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other parties signatory to this industry-wide collective bargaining Agreement, or with respect to any term or condition of employment hereunder (herein collectively referred to as a "dispute") shall be referred to the union shop steward and the appropriate employer representative on the job site; subsequently, the following should be considered:
>
> ● If the Union Shop Steward and an employer representative are unable to resolve the dispute, the matter shall be referred to the union business agent and the appropriate employer representative involving the job in question.
>
> ● If the Union Business Agent and appropriate employer representative are unable to resolve the dispute within twenty four (24) hours thereafter, the matter shall be referred to the Union Business Manager and the Association Representative for final disposition.
>
> ● Should the union business manager and the employer representative fail to agree on the resolution of the dispute, the matter shall be submitted to the New York State Employment Relations Board for an appointment of an arbitrator in accordance with the rules and regulations.

DE[23-1], Zabell Decl., Ex. D at 36.

The fourth Agreement at issue is with Local Union 138, 138A, 138B and 138C of the International Union of Operating Engineers for the period June 1, 2009 through May 31, 2015. That Agreement provides, in relevant part:

### ARTICLE IV - GRIEVANCE PROCEDURE

> . . . **Section 1.** It is agreed that for the purpose of settling any dispute between the parties herein as to any claim or violation of this Agreement, or any dispute that may arise in connection therewith, or for construing the terms and provisions hereof, the matter shall be taken up by the Employer with the Union. In the event that no amicable agreement can be reached, it may th[e]n be placed before a Joint

4

> Panel comprised of an equal number of Union and Long Island Contractors Association or Building Association representatives, as the case may be, whose decision may be final and binding.
>
> . . .
>
> In the event the Panel deadlocks and cannot reach a decision as to the issues submitted, the matter shall be promptly submitted to an arbitrator agreed upon by the parties.

DE[23-1], Zabell Decl., Ex. E at 9.

The defendants argue that these provisions compel arbitration of the wage claims herein. The decision as to whether to compel arbitration is governed by the FAA, and established federal public policy strongly favors arbitration as an alternative path toward resolution of a dispute. *Arrigo v. Blue Fish Commodities, Inc.,* 704 F. Supp. 2d 299, 302 (S.D.N.Y. 2010) (citations omitted). The Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit] has often and emphatically applied." *Id.* (quoting *Arciniaga v. General Motors Corp.,* 460 F.3d 231, 234 (2d Cir. 2006)). Compulsion of arbitration is not, however, without its limits, and no party may be compelled to arbitrate any dispute that it has not agreed to arbitrate. *Id.* (citations omitted).

To determine whether to compel arbitration, the court must consider: (1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of that agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. *Id.* (citing *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987)). If the court determines that some but not all of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceeding pending arbitration. *Genesco,* 815 F.2d at 844.

A collective bargaining agreement cannot preclude a lawsuit based on individual statutory

rights unless the arbitration clause in the agreement is "clear and unmistakable." *See Wright v. Universal Maritime Servs. Corp.,* 525 U.S. 70, 79-80 (1998); *Pyett,* 129 S. Ct. 1465 ("This Court has required only that an agreement to arbitrate be 'explicitly stated' in the collective-bargaining agreement.") (citing *Wright*, 525 U.S. at 80). A "clear and unmistakable" waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes. *Alderman v. 21 Club, Inc.,* 2010 WL 3304268, *7 (S.D.N.Y. Aug. 20, 2010) (citing *Rogers v. NYU,* 220 F.3d 73, 76 (2d Cir. 2000)(additional citations omitted)(abrogated on other grounds by *Pyett*)). The Agreements herein do neither.

The Agreements with the Road & Heavy Construction Laborers' Union Local #1298 all set forth a multi-step procedure for settling "any and all complaints, grievances, controversies or disputes between the union and the employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto . . . or with respect to any term or condition of employment hereunder . . ." Exs. B, C & D, Article IX, Section 1. The Agreement with Local Union 138, 138A, 138B and 138C of the International Union of Operating Engineers provides a grievance procedure, including arbitration, for settling "any dispute between the parties herein as to any claim or violation of this Agreement, or any dispute that may arise in connection therewith, or for construing the terms and provisions hereof . . ." Ex. E, Article IV, Section 1. Arbitration clauses such as these, which cover "any dispute concerning the interpretation, application or claimed

violation of a specific term or provision" of the CBA have been found not to contain the requisite clear and unmistakable waiver because "the degree of generality [in the arbitration provision] falls far short of a specific agreement to submit all federal claims to arbitration." *Alderman,* 2010 WL 3304268 at *7 (citing *Rogers,* 220 F.3d at 76). Courts have held that plaintiffs covered by a CBA that requires arbitration of any disputes concerning the interpretation or application of the agreement are entitled to pursue their statutory rights under the FLSA in federal court. *Id.* (citing *Tran v. Tran,* 54 F.3d 115, 117-18 (2d Cir. 1995); *Mascol v. E&L Transp., Inc.,* 387 F. Supp. 2d 87, 104-05 (E.DN.Y. 2005); *see also Jonites v. Exelon Corp.,* 522 F.3d 721, 725 (7th Cir. 2008)(finding language almost identical to language in Agreement herein was not an explicit waiver of right to sue under FLSA).

Courts have required specific references in the arbitration agreement to the statutes in question or to federal statutes generally. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981) (employee did not waive right to sue under FLSA where clause did not "expressly reference" statutory claim at issue); *Morris v. Temco Serv. Indus.*, 2010 WL 3291810 (S.D.N.Y. Aug. 12, 2010) (requiring arbitration where agreement explicitly stated that Title VII claims should be arbitrated); *Shipkevich v. Staten Island Univ. Hosp.,* 2009 WL 1706590, * (E.D.N.Y. June 16, 2009) (arbitration not mandated where CBA did not expressly reference statutory claims); *Martinez v. J. Fletcher Creamer & Son, Inc.,* 2010 WL 3359372, *4 (C.D. Cal. Aug. 13, 2010) (arbitration clause not clear and unmistakable where is does not incorporate any statutes, let alone FLSA); *Manuele v. Springfield,* 2010 WL 2348608, *7 (C.D. Ill. June 10, 2010) (arbitration agreement should mention either specific statutes or federal law generally); *compare Bailey v. Ameriquest Mortg. Co.,* 346 F.3d 821, 822-23 (8th Cir. 2003) (plaintiff clearly

7

and unmistakably agrees to arbitrate FLSA claims where CBA clause provides for arbitration of disputes for "wages and other compensation due.").

Here, the provisions in the CBA do not expressly specify that all disputes, including those arising under federal law, are subject to arbitration, nor do they mention FLSA in the arbitration clause. Thus, like the the provisions in *Alderman*, the provisions herein "are too broad and general to demonstrate the 'clear and unmistakable' intent to submit all federal statutory claims to arbitration." 2010 WL 33304268 at *7. Based on this finding, I recommend that the motion to dismiss and to compel arbitration be denied.

**B.      Motion to Amend:**

The plaintiffs seek to amend the complaint to add retaliation claims on behalf of nine plaintiffs, add a prevailing wage claim, revise the job titles of four plaintiffs, include the time period that plaintiff Juan Quinteros worked at Suffolk Paving, and correct the spelling of plaintiff Edvin Rivera's name. The defendants oppose the amendments as untimely, dilatory, prejudicial and futile.

Rule 15(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party may amend [its] pleading . . . by leave of court," and that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In making its determination, the court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments. *See Foman*, 371 U.S. at 182; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998); *Harrison v. NBD, Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998). Although amendments are generally favored because "they tend to facilitate a proper

decision on the merits," *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) (citation omitted), ultimately, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co.v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (*citing Foman*, 371 U.S. at 182).

Amendment should only be denied for good reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman,* 371 U.S. at 182). An amendment is futile if the claim would be unable to withstand a Rule 12 (b)(6) motion to dismiss. *See Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002). Indeed, "[t]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss - namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Amna v. New York State Dep't of Health,* 2009 WL 6497844, at *1 (E.D.N.Y. Sept. 3, 2009) *(quoting Crippen v. Town of Hempstead,* 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009)).

On a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007)). This stricture, however, is not applicable to legal conclusions, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009). The court must "determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give

9

rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal,* 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949 (internal quotation marks and citations omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

There is no basis here for a finding that the proposed amendments were unduly delayed or that the defendants would be prejudiced by their inclusion in the complaint. The deadline for amendments set out in the scheduling order was October 5, 2010, and the plaintiffs made their motion well within that time frame, in August 2010. Most of the defendants' arguments to the contrary are grounded in attacks on the factual validity of the proposed changes, arguments that play no role in this motion to amend analysis. As in a motion to dismiss, the court must, in considering a motion to amend, accept all of the proposed factual allegations as true. The court need not, on the other hand, accept the defendants' refutations of the facts as true. Many of the arguments that the defendants raise, for example, that there is insufficient temporal proximity between alleged retaliatory acts and the protected activity, might be raised after discovery, but are misplaced now. Similarly, the defendants' claims that they "did not refuse to re-hire Plaintiffs in March 2010" may be added to the answer, and may be supported by the record after discovery, but cannot be accepted now. The same is true of their blanket charge that the lawsuits brought by the defendants against two of the plaintiffs do not affect their "present employment or future employment prospects." *See* DE 27 at 9. I turn now to the defendants' arguments of futility based on law, and not on factual disputes.

**1**. *Failure to Notify Attorney General of Retaliation Claims*

The defendants note that there is no evidence that the plaintiffs have given notice of their claims to the Attorney General, as required by New York Labor Law § 215(2) (citing to *Crosland v. City of New York,* 140 F. Supp. 2d 300 (S.D.N.Y. 2001). I find, however, that such notice is not, under the circumstances herein, a condition precedent that would bar this amendment. Magistrate Judge Gold, in a Supplemental Report & Recommendation in *Estrella v. Coqui Check Cashing, Inc.,* 2010 WL 2975765 (E.D.N.Y. July 21, 2010),[2] addressed the question of whether service of notice pursuant to N.Y. Labor Law § 215 is a condition precedent to suit. He noted that, in *Crosland*, the court dismissed the Section 215 claims because there had been no notice prior to the statute of limitations running. It was not possible to determine, he found, "whether plaintiffs' §215 claim in *Crosland* would have been dismissed *solely* for failure to give notice, or if notice had been made within the limitations period but after the filing of the complaint." 2010 WL 2975765 at *1. While there appears to be no precedent directly on point regarding this issue, Judge Gold found that New York courts have come out both ways in considering whether failure to provide statutorily required notice is fatal to claims under other statutes. *Id.* at *2 (citations omitted). He looked for guidance to a New York Court of Appeals decision regarding N.Y. General Business Law §340, which, like N.Y. Labor Law §215, requires notice to the Attorney General at or before the time a claim is filed. *Id.* (citing *Columbia Gas of New York, Inc. v. New York State Elec. & Gas Corp.,* 28 N.Y.2d 117 (1971)). In *Columbia Gas*, the New York Court of Appeals held that the "requirement that notice be given is designed solely

---

[2] This R&R was never adopted, inasmuch as it was mooted by developments in the case. I rely on it not as precedent, but for its sound reasoning.

to apprise the Attorney-General that such an action was commenced so that he would be aware of the circumstances" and "may not be considered a condition precedent to the plaintiff's cause of action." 28 N.Y.2d at 129. I agree with Judge Gold's conclusion that the reasoning in *Columbia Gas* applies to Labor Law §215, and therefore recommend a finding that failure to give notice prior to making this motion does not bar the claim. Further, as Judge Gold concluded, Section 215 requires notice to the Attorney General, not to the defendants, and they are not prejudiced by delayed notice. *See* 2010 WL 2975765 at *3. In any event, the plaintiffs have now notified the Attorney General, and ask that they be permitted to amend the complaint anew to include that notice. *See* Pls. Reply Mem., DE[29] at 9; Goldberg Decl., DE[30], Exs. 2 & 3. I recommend that they be permitted to do so if the motion to amend is permitted.

### 2. *Challenge to Edvin Rivera's Application for Unemployment Benefits*

The defendants argue that an employer's challenge to eligibility for unemployment benefits is not an adverse action for retaliation claim purposes. *See* DE 27 at 10 (citing *Carter v. Potter*, 2008 WL 1848639 (E.D.N.Y. Apr. 23, 2008); *Barriera v. Bankers Trust*, 2003 WL 22387099 (S.D.N.Y. Oct. 20, 2003); *Whalley v. Reliance Group Holdings, Inc.,* 2001 WL 55726 (S.D.N.Y. Jan. 22, 2001)). However, the decisions relied on by the defendants involved motions for summary judgment, presumably made after the parties had an opportunity to conduct discovery. As the court in *Carter* noted, the plaintiff therein had "not produced evidence from which a reasonable jury could conclude that [the employer] took an adverse employment action by deciding to challenge her eligibility for workers' compensation benefits . . .," thus implying that the plaintiff had a chance to discover such evidence, but did not do so. 2008 WL 1848639 at *4. Here, Rivera has had no opportunity to determine whether the defendants' opposition to his

workers' compensation claim was reasonable, or based on legitimate or pretextual grounds; if the amended complaint is allowed, this claim should be included.

### 3. *Prevailing Wage Claim*

The defendants argue that the proposed prevailing wage claim is futile as a matter of law, because there is no private right of action for underpayment of prevailing wages until an administrative determination in the employee's favor has been rendered and affirmed, or has gone unreviewed. DE 27 at 11 (citing *Winsch v. Esposito Bldg. Specialty, Inc.,* 48 A.D.3d 558 (2nd Dep't 2008); *Dragone v. Bob Bruno Excavating, Inc.,* 45 A.D.3d 1238 (3rd Dep't 2007)). Here, no such determination has been made. Tied into this argument is the defendants' claim that the proposed re-classification of some plaintiffs as operating engineers instead of laborers is nothing more than "a veiled attempt to assert an otherwise defective prevailing wage claim under New York Lab[or] Law §220." DE 27 at 11. Defendants argue that "the plaintiffs lack standing to assert any claim involving any alleged violation of the prevailing wage law and by extension, worker classification under New York Lab[or] Law §220." *Id.*

The plaintiffs argue in response that they are not asserting a claim under New York Labor Law §220, but have third party beneficiary rights under the defendants' state funded contracts, and do not have to exhaust administrative remedies to claim those rights. *See* DE 29 at 11 (citing *Eldred v. Comforce Corp.,* 2010 WL 812698, *7 (N.D.N.Y. Mar. 2, 2010); *Cox v. NAP Constr. Co., Inc.,* 10 N.Y.3d 592 (2008)). The court in *Eldred* held that, under New York law, "employees are permitted to pursue their claims under the administrative procedures provided [in Labor Law §220] *or* as third-party beneficiaries to the state funded contracts." 2010 WL 812698 at *7 (citations omitted) (emphasis added). The plaintiffs ask, in this regard, that paragraph 106

13

of the proposed amended complaint, which asserts a claim under N.Y Labor Law §220, be removed and replaced with a paragraph that reads: "Plaintiffs, as third party beneficiaries, did not receive their proper wages pursuant to the contracts that Suffolk Paving had with the State and local municipalities." DE 29 at 11; *and see* Goldberg. Aff. [DE 30], Ex. 3. I recommend that, in the interest of moving this case along, the plaintiffs be permitted to do that. I note, however, that this issue was first raised in the plaintiffs' reply papers, and that the defendants have had no opportunity to challenge the argument. I recommend that they be permitted to do so in their opposition to this Report and Recommendation, or in separate argument to me, at Judge Feuerstein's referral.

I further recommend that the correction to the job titles be allowed, accepting the plaintiffs' argument that laborers, like operating engineers, are permitted to assert third party beneficiary rights.

### 4. *Additional Amendments*

I further recommend that the plaintiffs be permitted to correct the spelling of Edvin Rivera's name and to change the term of employment of Juan Quinteros. The defendants have shown no futility or prejudice as to these amendments.

### III. CONCLUSION

In sum, I recommend that the defendants' motion to dismiss and compel arbitration be denied. I further recommend that the plaintiffs' motion to amend be granted, and that they be permitted to file the Revised Proposed Second Amended Complaint, annexed as Exhibit 3 to the Goldberg Affirmation, subject to the defendants' objections to the arguments raised for the first time in the reply papers.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), cert. denied, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996).

Dated: Central Islip, New York
February 10, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge