**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
NELSON QUINTANILLA, ALEJANDRO
AMAYA, AREVALO MAYNOR FAJARDO,
WALTER GARCIA, JOSE L. MARTINEZ,
PRACELIS MENDEZ, OSMAR W. PAGOADA,
JAVIER QUINTANILLA, EDWIN RIVERA,
CARLOS ESCALANTE, KEVIN GALEANO,
LERLY NOE RODRIGUEZ, JOSE VEGA
CASTILLO, JUAN QUINTEROS, MARCOS
TULIO PEREZ,

       Plaintiffs,

    - against -

SUFFOLK PAVING CORP., SUFFOLK
ASPHALT CORP., LOUIS VECCHIA,
CHRISTOPHER VECCHIA, HELENE
VECCHIA, JOHN DOES #1-5,

       Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

09-CV-5331 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I. PRELIMINARY STATEMENT**

Plaintiffs assert claims against their current and/or former employers for the denial of wages and other benefits pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") as well as for breach of contract, quantum meruit, and unjust enrichment. Certain Plaintiffs also allege retaliation based on the termination of their employment after the filing of this lawsuit.

Before the Court is Plaintiffs' motion to amend the Second Amended Complaint. DE 94. Defendants Suffolk Paving Corp. ("Suffolk Paving"), Louis Vecchia, and Helene Vecchia (together, the "Suffolk Paving Defendants") oppose the motion. DE 98. Counsel for the Suffolk

Paving Defendants submitted a letter from counsel for Defendants Suffolk Asphalt Corp. ("Suffolk Asphalt") and Christopher Vecchia (together, the "Suffolk Asphalt Defendants") stating that the Suffolk Asphalt Defendants join in the opposition. *See* DE 98-1. For the reasons that follow, Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiffs are laborers, operating engineers and/or mechanics. Second Am. Compl. [DE 43] ("SAC") ¶ 1. Defendants Suffolk Paving and Suffolk Asphalt are paving contractors and are or were Plaintiffs' employers. *Id*. ¶¶ 11, 13. According to the SAC, the individual Defendants, Louis Vecchia, Christopher Vecchia, and Helene Vecchia, are all owners and/or decision makers for the corporate Defendants. *Id*. ¶¶ 16-23. The gravamen of Plaintiffs' Complaint is that Defendants failed to pay Plaintiffs their full wages, including overtime wages, and that they falsely reported the hours the Plaintiffs worked. *See id*. ¶ 47.

Plaintiffs filed the original Complaint in this case on December 7, 2009. DE 1. The Complaint asserted claims under the FLSA and NYLL, as well as claims for common law breach of contract, quantum meruit, and unjust enrichment. Plaintiff Maynor Fajardo also alleged that Defendants unlawfully discharged him in retaliation for complaining about Defendants' alleged wage violations. *Id*. ¶ 2.

Prior to Defendants' interposing an answer, Plaintiffs filed an Amended Complaint on January 19, 2010. DE 9. In the Amended Complaint, Plaintiffs added an unlawful retaliatory discharge claim on behalf of Plaintiff Pracelis Mendez. DE 9 ¶ 2. Defendants answered the Amended Complaint [DE 10] and initial conferences were held before District Judge Feuerstein and Magistrate Judge Wall. DE 12, 13. The deadline for the filing of motions to join new parties

or amend the pleadings was set for October 5, 2010 and the deadline for the completion of discovery was set for December 14, 2010. DE 14. Thereafter, Defendants filed a motion to dismiss on the grounds that the claims asserted were subject to arbitration [DE 22] and Plaintiffs filed a motion to amend seeking leave to add additional claims and to correct certain factual assertions [DE 26]. Both motions were referred to Judge Wall, the assigned Magistrate Judge at the time. Judge Wall recused himself and the case was re-assigned to the undersigned. This Court issued a Report and Recommendation on the two referred motions on February 10, 2011 [DE 34]. In the Report and Recommendation, which was adopted by Judge Feuerstein, *see* DE 42, the Court recommended that the motion to dismiss be denied. *See* DE 34 at 2-8. As to the motion to amend, the Court recommended that Plaintiffs be granted leave to amend in order to: (1) add additional retaliation claims, including a claim based on Defendants' alleged challenges to Plaintiff Edvin Rivera's application for unemployment benefits; (2) add a prevailing wage claim; (3) revise the job titles of four of the Plaintiffs; and (5) make certain corrections to the spelling of Plaintiffs' names and dates of employment. *Id*. at 8-14.

Plaintiffs filed a Second Amended Complaint on April 5, 2011 [DE 43] and Defendants answered [DE 46]. Plaintiffs then requested an extension of the deadline to complete discovery to July 14, 2011 and Judge Feuerstein granted that request. *See* DE 40, 41.

On June 21, 2011, Plaintiffs filed a letter motion to amend seeking leave to add two corporate entities, Cross Island Industries Inc. and L & V Site Development, Inc., as defendants. DE 56. The motion was denied without prejudice because motions to amend must be made by formal motion pursuant to the Federal Rules of Civil Procedure. *See* Electronic Order Dated June 22, 2011. Plaintiffs never filed a formal motion to amend to add these defendants.

On July 11, 2011, the parties consented to the jurisdiction of the undersigned Magistrate Judge for all purposes and the case was transferred on July 26, 2011. DE 60, 69. Several discovery disputes arose and the discovery deadline was once again extended to October 17, 2011. DE 76.

At a status conference on October 3, 2011, Plaintiffs informed the Court that they planned to seek leave to amend the Second Amended Complaint to incorporate amendments to the New York Labor Law under the New York Wage Theft Prevention Act. *See* DE 89. No other proposed amendments were discussed. A briefing schedule for the motion was established and, in accordance with that schedule, Plaintiffs filed a motion to amend on November 28, 2011. DE 94. Plaintiffs submitted a Proposed Third Amended Complaint [DE 96-1] ("PTAC") which includes the following proposed changes: (1) an amendment to the New York Labor Law claim to include a request for increased liquidated damages pursuant to the New York Wage Theft Prevention Act; (2) additional retaliation claims and facts pertaining to those claims; (3) additional facts that "clarify the integrated nature of Defendants' businesses;" and (4) correction of the dates of employment for three Plaintiffs. *See* DE 95 at 4.

A telephone conference was held on January 11, 2012 to discuss the motion to amend as well as other matters in the case. *See* DE 108. During the conference, counsel confirmed that all discovery was complete. *Id*. The Court requested that the parties provide the full transcripts of the depositions of certain Plaintiffs which the Court deemed necessary to resolving the motion to amend and stayed this matter pending its decision on that motion. *See* DE 109 at 5-7.

## III. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A court "should freely give leave when justice so requires" and such leave is in the court's discretion. Fed. R. Civ. P. 15(a); *accord Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000).

Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, at 213-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)); *see also SCS Commc'n, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004) (noting that under Rule 15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502-03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-8 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## IV. DISCUSSION

The Court will address the proposed changes in the following order: (1) addition of increased liquidated damages claim pursuant to the New York Wage Theft Prevention Act; (2) new retaliation claims; and (3) new facts that "clarify the integrated nature of Defendants' businesses" and correct the dates of employment for three Plaintiffs.

### A. Liquidated Damages Pursuant to the New York Wage Theft Prevention Act

The New York Wage Theft Prevention Act ("WTPA") amends the New York Labor Law and provides in relevant part that a prevailing party in a case based on wage underpayment may obtain "liquidated damages equal to one hundred percent of the total of such underpayments found to be due." *See* NYLL § 663(1). Prior to the enactment of the amendment, which became effective on April 9, 2011, a prevailing party was only entitled to twenty-five percent of the underpayments. *See id.*; *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635, 2011 WL 2022644, at *6 n.2 (S.D.N.Y. May 2, 2011), *adopted by*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).

Plaintiffs assume that the WTPA amendments do not apply to this case at all unless the statute is retroactive. *See* Pls.' Mem. [DE 95] at 6-9. Some of Plaintiffs' claims, however, appear to post-date the enactment of the WTPA. Plaintiffs allege that many of the individual Plaintiffs continue to work for the Defendants, *see* SAC ¶¶ 27, 30, 33, 35, 36, 37, 39, 40, 41, and the claims appear to be based on the entire span of the Plaintiffs' employment. Thus, the Court will discuss the pre-WTPA and post-WTPA claims separately.

Beginning with the claims that arose prior to the enactment of the WTPA, the Court concludes that the WTPA does not apply and the claims are therefore futile. Several courts addressing the applicability of the WTPA have held that the WTPA is not retroactive. *See*

*Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *9 n.19 (S.D.N.Y. May 14, 2012); *McLean v. Garage Mgmt. Corp.*, No. 10-CV-3950, 2012 WL 1358739, at *9 (S.D.N.Y. April 19, 2012); *Benavidez v. Plaza Mex. Inc.*, No. 09-CV-5076, 2012 WL 500428, at *8-9 (S.D.N.Y. Feb. 15, 2012); *Chenensky v. New York Life Ins. Co.*, No. 07-CV-11504, 2012 WL 234374, at *3 (S.D.N.Y. Jan. 10, 2012); *Wicaksono*, 2011 WL 2022644, at *6 n.2.

Although the weight of the authority supports a finding against retroactivity, Plaintiffs urge the Court to rely on an unpublished, unreported New York State Supreme Court decision, namely, *Ji v. Belle World Beauty, Inc.*, No. 603228/2008 (N.Y. Sup. Ct. Aug. 24, 2011). In a two paragraph discussion, the court in *Ji* held that the WTPA may be applied retroactively. *Id.* at 5-6. This appears to be the only case to have reached such result. The court in *Ji* and Plaintiffs both assumed that if a statute is remedial, then it is automatically given retroactive effect. Pls.' Mem. at 7-9. This conclusion oversimplifies the analysis. The Second Circuit has held that:

> [T]he mere classification of "a statute as 'remedial' does not automatically overcome the strong presumption" that statutes should be applied prospectively, "since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law.'" *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998) (quoting N.Y. Stat. Law § 321). To determine whether a statute should be applied retroactively, courts must look at legislative history to see if it "reveals that the purpose of new legislation is to clarify what the law was always meant to say and do." *Id.* at 585, 673 N.Y.S.2d 966, 696 N.E.2d 978. Simply put, there must be a "clear" expression of legislative intent to apply a statute retroactively. *Id.* at 589, 673 N.Y.S.2d 966, 696 N.E.2d 978.

*CFCU Comm. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009). Plaintiffs do not cite any legislative history or other expression of legislative intent supporting retroactive application, nor did the court in *Ji*. There is nothing in the legislative history of the WPTA to suggest that the

7

legislature intended it to have retroactive effect. *See McLean*, 2012 WL 1358739, at *9; *Chenensky*, 2012 WL 234374, at *3.

Plaintiffs appear to acknowledge that their position to the effect that all remedial statutes apply retroactively is contrary to the holding of *CFCU Comm. Credit Union* in that they cite the case as a "*Cf*" authority. *See* Pls.' Mem. at 8. That Second Circuit decision, however, is binding on this Court and cannot be ignored. Moreover, the cases Plaintiffs rely on to support the argument that all remedial statutes have retroactive effect were decided prior to *Majewski*, the New York Court of Appeals case cited in *CFCU*. *See id.* at 7-9 (citing *Mendler v. Fed. Ins. Co. v. A.D. Winston Corp.*, 159 Misc. 2d 1099, 607 N.Y.S.2d 1000 (N.Y. Sup. Ct. 1993); *Matter of City of New York*, 160 A.D.2d 696, 553 N.Y.S.2d 789 (2d Dep't 1990); *First Bank & Trust Co. of Corning v. State*, 184 A.D.2d 1034, 1034, 585 N.Y.S.2d 261 (4th Dep't 1992)). The cases relied on by the court in *Ji* also predate *Majewski*.

For the forgoing reasons, the Court concludes that the WTPA does not have retroactive effect and thus does not apply to Plaintiffs' NYLL claims that predate its enactment. To the extent that Plaintiffs are pursuing claims which post-date the enactment of the WTPA, Plaintiffs are granted leave to amend to seek the liquidated damages permitted by the WTPA. Plaintiffs' statement that they did not seek leave to amend until the court in *Ji* ruled in late August 2011 on the retroactivity issue, *see* Pls.' Mem. at 5, does not explain the delay in seeking leave to amend the post-April 2011 claims, since retroactivity is not an issue for those claims. *See Chenensky*, 2012 WL 234374, at 3 (holding that Plaintiffs were entitled to liquidated damages in the amount of 100% of underpayment only for period after enactment of WTPA). However, the Court does not find the intervening six-month period to constitute an "undue" delay. Moreover, undue delay

alone is not a basis for denying leave to amend. *Worldwide Home Prods., Inc. v. Time, Inc.*, No. 11-CV-3633, 2012 WL 1428528, at *2 (S.D.N.Y. Apr. 20, 2012). Plaintiffs state that this amendment will not necessitate any additional discovery, Pls.' Mem. at 5, and there is no other apparent prejudice to Defendants stemming from the late amendment. Although Defendants argue that Plaintiffs "lack standing to decide . . . whether the proposed amendments will require additional discovery," Defendants do not identify any discovery necessitated by this specific amendment. *See* Defs.' Mem. at 4. To ensure that there is no prejudice to the Defendants, the Court will entertain reasonable discovery requests by the Defendants.

### B. Additional Retaliation Claims

Plaintiffs also seek to add more recent acts of retaliation to the operative complaint, i.e., (1) the alleged opposition by Defendants to the unemployment applications of Plaintiffs Nelson Quintanilla and Lerly Rodriguez, and (2) Defendant Louis Vecchia's alleged procurement of Plaintiff Pracelis Mendez's discharge by his subsequent employer. Courts routinely permit plaintiffs to supplement pleadings to include alleged acts of retaliation that, like these, occurred after the original complaint was filed. *See,e.g., Ke v. 85 Fourth Ave. Inc.*, No. 07-CV-6897, 2009 WL 185949, at *2 (S.D.N.Y. Jan. 22, 2009); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008).

#### 1. *Opposition to Unemployment Applications*

In the PTAC, Plaintiffs allege that in August 2011, Plaintiffs Nelson Quintanilla and Lerly Rodriguez were fired from Suffolk Asphalt. PTAC ¶ 98. Plaintiffs further allege that, in retaliation for filing this lawsuit, Defendants opposed Quintanilla and Rodriguez's applications for unemployment. *Id.* ¶ 100. According to the Plaintiffs, in the past, these Plaintiffs, as well as

others, would regularly file for unemployment benefits in the "off season" and Defendants never opposed such applications until Plaintiffs filed this lawsuit. *Id.* ¶ 103.

Defendants first contend that Rodriguez and Quintanilla were not terminated and refer the Court to the Plaintiffs' respective deposition transcripts as support for this conclusion. Defs.' Mem. at 7. This argument fails, however, because the new retaliation claim is based solely on Defendants' opposition to Quintanilla and Rodriguez's unemployment benefits applications, not to their termination.[1] Moreover, on a motion to amend, the Court must accept the facts in the proposed amended complaint as true and cannot look to information outside the four corners of the pleading, such as the Defendants' reliance on portions of the deposition transcripts. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005) (holding that courts must accept facts alleged by party seeking to amend as true); *In re N. Telecom Ltd. Sec. Litig.*, 42 F. Supp. 2d 234, 251 (S.D.N.Y. 1998) (holding that adequacy of evidence is not properly addressed on a motion under Rule 15); *Gross v. Hanover Ins. Co.*, No. 09-CV-0079, 1991 WL 102401, at *3 n.1 (S.D.N.Y. June 5, 1991) (rejecting defendant's submission of affidavits and exhibits in opposition to motion to amend).

Defendants next argue that employers "who contest employee applications for unemployment insurance benefits do not run afoul of the anti-retaliation laws." Defs.' Mem. at 7-8 (citing *Carter v. Potter*, No. 06-CV-3854, 2008 WL 1848639 (E.D.N.Y. Apr. 23, 2008); *Barriera v. Bankers Trust*, 2003 WL 22387099, at *7-8 (S.D.N.Y. Oct. 20, 2003); *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97-CV-4018, 2001 WL 55726, at *12 (S.D.N.Y. Jan. 22,

---

[1] Plaintiffs previously asserted a retaliatory termination claim on behalf of the named Plaintiffs. *See* SAC ¶ 127.

2001)). The Court has already addressed this argument in its February 10, 2011 Report and Recommendation on Plaintiffs' prior motion to amend to add a similar claim on behalf of Plaintiff Edvin Rivera. *See* DE 34 at 12-13. There, the Court distinguished the very cases that Defendants rely upon here (i.e., *Carter*, *Barriera*, and *Whalley*) on the grounds that "the decisions relied on by defendants involved motions for summary judgment, presumably made after the parties had an opportunity to conduct discovery" and had an "opportunity to determine whether the defendants' opposition to [Plaintiff's] workers' compensation claim was reasonable." *Id*. The Court will not revisit this argument further other than to state that the fact-dependent question of whether Defendants' opposition to Quintanilla and Rodriguez's claims for unemployment benefits was reasonable is not a proper inquiry on a motion to amend. The Court also notes that here (as distinguishable from *Carter* and *Barriera*), the context is different. Plaintiffs' allegations of retaliatory opposition are drawn in the setting of an alleged prior pattern of conduct by the Defendants in which the Defendants did *not* challenge previous unemployment claims by these Plaintiffs and only engaged in such behavior after this lawsuit was filed.

Defendants' final argument on this issue is that Plaintiffs' deposition testimony confirms they submitted false information to the Department of Labor for the purpose of obtaining benefits. Defs.' Mem. at 8. This factual issue is not an appropriate consideration for the Court on a motion to amend and, in any event, is not dispositive of Plaintiffs' retaliation claims.[2]

---

[2] Even if the Court were to consider the evidence cited by the Defendants on this point, it would not necessarily draw the same conclusions that Defendants have drawn here. Citing the deposition transcript, Defendants claim Quintanilla testified "that he advised the DOL that the basis for his separation from employment with Defendants was 'lack of work'; a statement that was false." *Id*. at 8 (citing Quintanilla Tr. at 15, 32-34). The referenced testimony, especially when read in the context of the full exchange between counsel and Quintanilla, does not fully comport with Defendants' description. The Court also disagrees with Defendants' interpretation

In sum, Defendants' arguments based on futility fail.

The Court notes that in the PTAC, although Plaintiffs allege facts in support of Rodriguez and Quintanilla's claims that Defendants retaliated against them by opposing their unemployment benefits, *see* PTAC ¶¶ 98 -106, the claims are not set forth in the enumerated causes of action. In the Third Amended Complaint that Plaintiffs ultimately will file, these claims should be set forth as a separate cause of action or incorporated into what is now the Tenth Cause of Action in the SAC – "Retaliating Against Edwin Rivera By Disputing His Unemployment Benefits."

### 2. *Pracelis Mendez's Discharge*

Plaintiffs also seek leave to add retaliation claims against the Defendants based on Plaintiff Pracelis Mendez's discharge by his subsequent employer. Pls.' Mem. at 10-11. The PTAC alleges that during the "contentious deposition" of Mendez on July 22, 2011 and

---

of the referenced portion of the Rodriguez deposition, in which Defendants claim Rodriguez testified that he failed to check his voicemail messages to see if he had been offered work by Defendants. Defs.' Mem. at 8-9 (citing Rodriguez Tr. at 125-26).

Moreover, after reviewing all of the transcripts submitted, the Court finds that the record raises significant concerns about the methodology utilized by Defendants' counsel in conducting the deposition. By way of example, in looking at the transcript of the Quintanilla deposition, the Court finds multiple exchanges in which defendants' counsel was, among other things, demeaning to both the witness and to opposing counsel. *See* Quintanilla Tr. at 10-11, 34-35, 50, 65. In other sections, counsel's badgering of the witness is equally apparent. *Id.* at 55, 59-60, 98, 101, 134. Similar incidents are observed in the transcript of the Rodriguez deposition. *See* Rodriguez Tr. at 9-10, 12-13, 56-58, 72-73, 108-110, 126-127. Particularly troubling to the Court is the exchange between defendants' counsel, Plaintiff Lerly Rodriguez, and eventually plaintiffs' counsel regarding questions directed to Mr. Rodriguez about his driver's license and Social Security number. After plaintiffs' counsel raised concern about the line of questioning running afoul of the previously issued protective order regarding the immigration status of the plaintiffs, defendants' counsel stated in the record ". . . don't you know that if you're going to try this one with the big dogs, you're going to have to be prepared? . . . you know that, right? I am referring specifically to - - I've already scanned [Rodriguez 's driver's license] and sent it off to the authorities."

September 13, 2011, at which Defendant Louis Vecchia was present, Mendez was forced to disclose that he had been working for six months for Capital Concrete, a wholly owned subsidiary of D.F. Stone Contracting Ltd. ("D.F. Stone"), at the time. PTAC ¶¶ 165-68. The owner of D.F. Stone, whose name is George, is purportedly a friend of Louis Vecchia. *Id.* ¶ 170. According to the Plaintiffs, on the morning of the second day of his deposition, while waiting to start his testimony, Mendez was told by Louis Vecchia that he was talking with Mendez's boss "George" on the telephone. *Id.* ¶ 171. At that point, Louis Vecchia purportedly moved approximately 50 feet away from Mendez to continue his conversation with "George." *Id.* ¶ 172. Plaintiffs maintain that this interaction was clearly "aimed at intimidating Mr. Mendez and was an implied threat of retaliation by Louis Vecchia." *Id.* ¶ 173.

Two days after completing his deposition, Mendez was allegedly told that D.F. Stone had no more work for him, despite his record of good performance with that company and the availability of work. *Id.* ¶¶ 174-76. Plaintiffs allege that Vecchia "used his personal relationship with the owner of D.F. Stone to procure Mr. Mendez's unlawful discharge in retaliation for participating in this lawsuit and testifying against Defendants." *Id.* ¶ 177.

Defendants oppose this claim on the grounds that it is "fantastical," "hyperbolic conjecture," "devoid of admissible evidence" and "unsubstantiated." Defs.' Mem. at 9. Such generalized criticism does not constitute sufficient grounds for denying a motion to amend. Although Defendants do not contest whether the alleged conduct of Louis Vecchia constitutes unlawful retaliation, the Court notes that such a theory of liability is supported by the case law in this Circuit. *See Apionishev v. Columbia Univ.*, No. 09-CV-6471, 2011 WL 1197637, at *7 n.88 (S.D.N.Y. March 25, 2011) (noting support for proposition that spreading negative information

to a former employee's prospective employer is grounds for a retaliation claim); *Ke*, 2009 WL 185949, at *1 (granting motion to amend FLSA complaint to add retaliation claim based on former employer's threats to have employee fired from his current job); *Graci v. Independent Health Ass'n, Inc.*, No. 05-CV-231A, 2007 WL 2403723, at *7 n.4 (W.D.N.Y. Aug. 20, 2007) (noting that ADA complaint alleged a distinct retaliation claim based on defendant's contact with plaintiff's subsequent employer that led to plaintiff's termination). The claim, therefore, is not futile and Plaintiffs may include it in their Third Amended Complaint.

C.   **Additional Amendments**

The remainder of the proposed amendments do not seek to add new claims or parties, but rather seek to include information learned in discovery, i.e., "clarif[y] the integrated nature of Defendants' businesses," and "correct the dates of employment" for certain Plaintiffs. Pls.' Mem. at 4.

In the first set of amendments, Plaintiffs seek to add facts regarding the ownership structure of the corporate Defendants and expound upon the relationship among the Defendants. *See* Pls.' Mem. at 11. Defendants oppose these changes on the grounds that such action constitutes a "clear attempt to . . . include additional parties" in the case. Defs.' Mem. at 10. The Court does not read or interpret Plaintiff's motion as requesting such relief. In fact, Plaintiffs expressly represent that they "are not seeking to add additional parties or causes of action, but are merely looking to further clarify and correct the language in the complaint based on information that was revealed by Defendants during discovery." Pls.' Reply Mem. at 7.[3]

---

[3]   Although Plaintiffs previously filed a letter motion to amend seeking leave to join two additional corporate entities as defendants, they never followed up with a formal motion after the Court rejected their prior letter motion as procedurally improper. *See* DE 56; Electronic Order

Defendants also make an argument against the proffered amendment based on a Discovery Order entered by the Court on September 30, 2011. *See* Defs.' Mem. at 10. In that Order, the Court issued a ruling concerning Defendants' letter request to file a motion to quash subpoenas served on Defendants' non-party accountants. Those subpoenas sought financial information about the corporate Defendants and two other purportedly unrelated entities which, according to one of the Plaintiffs, had actually paid him. DE 88. With respect to the records of the corporate Defendants, I directed Defendants to respond to Plaintiffs' interrogatories by stating the specific amount of gross sales generated for the applicable years and, for years where Defendants are claiming that they did not meet the gross sales requirement under the FLSA, to produce their corporate tax returns. *Id*. With respect to the non-party entities, Plaintiffs' counsel then withdrew the subpoenas on the record in light of information they received during depositions. *Id*. Defendants argue that since they served Plaintiffs with the statement (presumably the interrogatory responses) as directed by the Court "any and all issues pertaining to unrelated businesses owned and/or operated by Defendant Louis Vecchia are moot." Defs." Mem. at 10. However, the Court fails to see the relevance of Defendants' compliance with the Court's September 30, 2011 Order to the instant dispute. The fact that Defendants complied with the Court's Order simply has no bearing on whether Plaintiffs should be permitted to amend their complaint. Without any demonstration of prejudice or otherwise reasonable basis for barring such amendment, the Court grants Plaintiffs leave to amend to add facts learned through

---

Dated June 22, 2011. Plaintiffs are on notice that, given their failure to file a motion to amend to add new parties after receiving the Court's June 22, 2011 Order and their statement that they do not intend to add additional parties, any requests for leave to amend to add new parties in the future will not be considered absent extraordinary circumstances.

discovery and depositions in the months prior to the instant motion pertaining to the relationship between the Defendants.

Plaintiffs also seek to change the employment dates for Plaintiffs Nelson Quintanilla, Walter Garcia, and Jose Vega Castillo. The new employment dates reduce the amount of time the Defendants worked for Suffolk Paving. *See* Pls.' Mem. at 12. Defendants argue that the changes to the dates of employment should not be permitted because the dates are inconsistent with Plaintiffs' deposition testimony and damage Plaintiffs' credibility. *See* Defs.' Mem. at 11. Regardless of whether this is an accurate assessment, the fact that the allegations may reflect poorly on the Plaintiffs' credibility is not a basis for the denial of leave to amend. Defendants can address Plaintiffs' credibility and the alleged inconsistencies at the appropriate time. The Court notes that it previously allowed Plaintiffs to amend their Complaint and change the term of employment for Plaintiff Juan Quinteros. *See* DE 34 at 14. Defendants have not demonstrated any prejudice resulting from these amendments. In fact, the amendments benefit Defendants because if liability is found, the damages assessment will be lower since the period of time for which these Plaintiffs worked for Defendants was shorter than originally asserted. The Court will therefore permit Plaintiffs to amend the employment dates for Quintanilla, Garcia, and Castillo.

**V.** **CONCLUSION**

For the forgoing reasons, Plaintiffs' motion to amend is granted to the extent set forth in this Order. Plaintiffs are to file the Third Amended Complaint within ten (10) days of the date of this Order . A telephone conference is set for October 16, 2012 at 2:00 p.m. and counsel are directed to be prepared to discuss very specifically any further discovery necessitated by the

16

amendments permitted here, as well as the remainder of the pre-trial schedule in this case. Counsel are directed to provide the Court with a bullet-point list of such items on ECF by October 11, 2012.

**SO ORDERED:**

Dated: Central Islip, New York
September 17, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge