UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NELSON QUINTANILLA, *et al.,*     Civil Action No.: 09 Civ. 5331

                           Plaintiffs,

    v.

SUFFOLK PAVING CORP., SUFFOLK
ASPHALT CORP., LOUIS VECCHIA,
CHRISTOPHER VECCHIA,
HELENE VECCHIA and JOHN DOES 1-5,

                           Defendants.
---------------------------------------------------------------X

## AFFIRMATION IN OPPOSITION OF IAN WALLACE

      I am Plaintiff's attorney in this matter, am fully aware of the facts stated herein and submit this affidavit in support of Plaintiff's opposition to Defendants' motion for summary judgment.

1.     Attached as Exhibit A is a true and accurate copy of Plaintiff Nelson Quintanilla's deposition transcript.

2.     Attached as Exhibit B is a true and accurate copy of Plaintiff Alejandro Amaya's deposition transcript.

3.     Attached as Exhibit C is a true and accurate copy of Plaintiff Javier Quintanilla's deposition transcript.

4.     Attached as Exhibit D is a true and accurate copy of Plaintiff Jose Vega Castillo's deposition transcript.

5.     Attached as Exhibit E is a true and accurate copy of Plaintiff Juan Quinteros's deposition transcript.

6.     Attached as Exhibit F is a true and accurate copy of Plaintiff Kevin Galeano's deposition transcript.

7.  Attached as Exhibit G is a true and accurate copy of Plaintiff Osmar Pagoada's deposition transcript.

8.  Attached as Exhibit H is a true and accurate copy of Plaintiff Alex Amir Arevalo's deposition transcript.

9.  Attached as Exhibit I is a true and accurate copy of Plaintiff Lerly Noe Rogriguez's deposition transcript.

10. Attached as Exhibit J is a true and accurate copy of Plaintiff Edvin Rivera's deposition transcript.

11. Attached as Exhibit K is a true and accurate copy of Plaintiff Maynor Fajardo's deposition transcript.

12. Attached as Exhibit L is a true and accurate copy of Plaintiff Marcos Tulio Perez's deposition transcript.

13. Attached as Exhibit M is a true and accurate copy of Plaintiff Walter Garcia's deposition transcript.

14. Attached as Exhibit N is a true and accurate copy of Plaintiff Jose Martinez's deposition transcript.

15. Attached as Exhibit O are true and accurate copies of Plaintiff Pracelis Mendez's deposition transcripts.

16. Attached as Exhibit P is a true and accurate copy of Plaintiff Carlos Escalante's deposition transcript.

17. Attached as Exhibit Q is a true and accurate copy of Defendant Louis Vecchia's deposition transcript ("L. Vecchia Tr.").

18. Attached as Exhibit R is a true and accurate copy of Defendant Christopher Vecchia's deposition transcript. ("C. Vecchia Tr.").

19. Attached as Exhibit S is a true and accurate copy of Defendant Helene Vecchia's deposition transcript. ("H. Vecchia Tr.")

20. Attached as Exhibit T is a true and accurate copy of Thomas McEvilly's deposition transcript. ("McEvilly Tr.")

21. Attached as Exhibit U is a true and accurate copy of the initiating complaint in this action.

22. Attached as Exhibit V is a true and accurate copy of the first amended complaint.

23. Attached as Exhibit W is a true and accurate copy of the second amended complaint.

24. Attached as Exhibit X is a true and accurate copy of the third amended complaint.

25. Attached as Exhibit Y is a true and accurate copy of the court's protective order, dated August 10, 2011.

26. Attached as Exhibit Z is a true and accurate copy of the court ordered confidentiality agreement, dated August 10, 2010.

## **Evidence That Plaintiffs Were Vastly Underpaid Their Hours**.

27. Attached as Exhibit 1 is a true and accurate copy of a timesheet for Lerly Noe Rodriguez.

28. Attached as Exhibit 2 is a true and accurate copy of a computerized timesheet for Lerly Noe Rodriguez.

29. Attached as Exhibit 3 are true and accurate copies of various timesheets for hours, including hours performed by Plaintiffs for Defendants for various time periods.

30. Attached as Exhibit 4 are true and accurate copies of various disciplinary write ups issued to various Plaintiffs.

31. Attached as Exhibit 5 are true and accurate copies of affidavits of service.

32. Defendants issued Plaintiffs with daily schedules. Attached as Exhibit 6 are copies of daily schedules containing the names of the named Plaintiffs for various periods in 2009, some of which state: "5:30AM – ON JOB. MUST BE PAVING BY 6:00AM." All of these daily job schedules provide job start times between 5.30AM-6:30AM. Id. These daily schedules would be given to the Plaintiffs who chauffeured the remaining Plaintiffs to each job location every morning in Defendants' trucks. The Plaintiffs who drove would be "usually" given daily schedules for every day of their employment. These schedules were generated and in use throughout 2008-2009. (L. Vecchia Tr. at 279-280, 283-284, 290). Vecchia testified that he believed he retained copies of these daily schedules because "we have lots of boxes all over the place" but that he had "no idea" where the original copies might be kept. (Id at 286, 290). These schedules often indicated that the Plaintiffs were to obtain asphalts and other materials at various plants before proceeding to the work sites. (Id; L. Vecchia Tr. at 287-289).

33. The collective bargaining agreement in place between Union 138 and Defendants ("CBA"): "The Employer shall have the right to establish a separate crew that may be scheduled to work on Saturday at straight-time as part of the crew's normal work week. Such employees will receive overtime for all hours worked in excess of eight (8) in one day, and forty (40) in one work week beginning on Sunday at 12:01 AM."  A copy of the CBA is attached as Exhibit 7 ("P0017" at Section 4).

34. Thus arguably, members of Union 138 were entitled to overtime pay for all hours worked in excess of eight hours per day, in addition to overtime pay for all hours performed in excess of forty hours per week.

35.     The following Plaintiffs were at all relevant times members of Union 138, and while they were employed by Defendants: Maynor Fajardo, Pracelis Mendez, Walter Garcia and Lerly Noe Rodriguez.

36.     Attached as Exhibit 8 are true and accurate copies of a computer-generated timesheet for Lerly Noe Rodriguez for the period 4/9/09-4/15/09 (indicating that Rodriguez had worked 32 hours during that period of time) and a corresponding paystub for that same period indicating that Defendants had paid Rodriguez a check for only 8 hours of regular time at the hourly rate of $44.14 and 30 minutes of "grease time" at the rate of $35.96. Id. Louis Vecchia testified that the shortfall of 24 hours in Rodriguez's pay for this period of time (at the hourly rate of $44.14) were either paid to him in "cash" or Rodriguez was paid "from the other company" (i.e., Suffolk Paving) and that this payment (for approximately $1059.36) would have been recorded in either "another sheet somewhere," or Rodriguez would have signed a document verifying receipt of the cash payment and/or the cash payment would have recorded in Louis Vecchia's "daily agenda book." (L. Vecchia Tr. at 118-121, 123) ("usually we had the guy sign some papers that they were paid for all the hours they worked. Like once or twice a year we would make sure that we had them sign it."). Vecchia testified that he had handwritten the number "8" on Rodriguez's weekly timesheet to indicate that he was paid for those eight regular hours by check and that the remaining hours that Rodriguez had worked that week (i.e., 24 hours) were paid to him in cash, which cash payment did not appear on Rodriguez's accompany paystub for that period. (Ex. 16; L. Vecchia Tr. at 145).

37.     Louis Vecchia claimed that the eight hours were paid by check to Mr. Rodriguez as it was a "prevailing wage" job and thus had to be paid that amount "legally." (L. Vecchia Tr. at 146).

38. Louis Vecchia testified that these "daily agenda books" were stored either "in the garage at my son's house, they could be at the office, they could be at my garage, they could be in a box of stuff when I clean out a car usually at the end of the year." (L. Vecchia Tr. at 121).

39. Louis Vecchia testified that approximately between 2005-2009, he paid Rodriguez about 25 cash payments a year between the period 2008-2009 (L. Vecchia Tr. at 122-123), he paid Walter Garcia about 24-25 cash payments per year for wages (id at 130), he paid Edvin Rivera approximately 24-25 cash payments per year for wages (id at 135-136), he paid Carlos Escalante approximately 24-25 cash payments per year for wages (id at 136), he paid Pracelis Mendez cash payments for wages about 25-40 times per year[1] (id at 130-131), which payments were all recorded by Louis Vecchia in his "daily agenda books" or on the weekly time sheets. (Id). Louis Vecchia kept records of all cash payments issued to Plaintiffs per year in one "daily agenda book", i.e., he used one book per year to record all cash payments. (Id at 131-133). Louis Vecchia testified that he does not believe that he gave Kevin Galeano, Alejandro Amaya or Alex Amir Arevalo any cash payments for wages but he "might" have given Juan Quinteros and Jose Vega Castillo cash payments (Id at 136-137, 139).

40. Louis Vecchia testified that he paid Maynor Fajardo about 25-40 cash payments during the year for his wages that were similarly recorded in his "daily agenda books" and Fajardo would have signed a paper attesting receipt of the cash, which were forms generated between 2006 through 2009. (L. Vecchia Tr. at 127-129). Prior to 2006, Louis Vecchia recorded all cash payments for wages in his "daily agenda books" or on the weekly timesheets themselves. (Id at 129).

---

[1] Louis Vecchia testified that he paid Plaintiffs Fajardo and Mendez cash payments for wages with the same frequency (Id at 127, 130-131).

41. These daily agenda books were stored in boxes and Louis Vecchia testified that he "hoped" that he had recorded all cash payments to Plaintiffs in these agenda books or sometimes he would put the dollar sign on the weekly time sheets to remind himself to pay the Plaintiffs in cash. (L. Vecchia Tr. at 135, 144-145). Louis Vecchia later testified, however, that any and all cash payments issued to Plaintiffs for wages would be either recorded in the "weekly daily agenda" books or indicated on the timesheets and that there would not be any other place where these cash payments were recorded for any year. (Id at 150).

42. At the time Louis Vecchia was deposed in this action, the Suffolk County Attorneys' office had already raided Defendants' premises and seized many of Defendants' company records.

43. When asked why he would pay so much of Plaintiffs' wages in cash, Louis Vecchia testified that it was because: "Basically on these jobs, we had to be very competitive on the jobs and I couldn't pay ... I had to work a different rate out with them in order to get the jobs" and because the Plaintiffs themselves requested these cash payments. (L. Vecchia Tr. at 138).

44. However, Louis Vecchia then immediately conceded that Maynor Fajardo had never requested that his wages be paid in cash and that he was the "spokesperson" for many of the other Plaintiffs. (L. Vecchia Tr. at 139-140).

45. Then, Louis Vecchia also conceded that Pracelis Mendez and Maynor Fajardo had only requested cash payments for wages "once or twice." (L. Vecchia Tr. at 140-141).

46. Louis Vecchia testified that the following Plaintiffs had not requested wages in the form of cash payments: Edvin Rivera, Lerly Noe Rodriguez, Jose Vega Castillo, Juan Quinteros and Marcos Tulio Perez. (L. Vecchia Tr. at 141-142).

47. To date, Defendants have not produced any documents that indicates Rodriguez or any other named Plaintiff was paid any supplemental wage payment at this time or any other time, either by check, cash or otherwise.

48. Moreover, Defendants failed to produce any of the "daily agenda books" referenced by Louis Vecchia or any document purporting to indicate frequent and regular cash payments to Rodriguez or any other named Plaintiff.

49. In fact, to date, there are no documents that exist recording any cash payment issued by Defendants to any of the Plaintiffs during their employment.

**The Discrepancy Between The Plaintiffs' Hours Reported by Defendants On Their Weekly Timesheets and the Hours Reportedly Paid on The Corresponding Paystubs.**

50. Defendants created computer-generated timesheets for all the Plaintiffs hours weekly. While Defendants' computerized timesheets almost invariably vastly underreported the hours reported by Plaintiffs in their own handwritten timesheets. (See e.g., Exhibit 2; L. Vecchia Tr. at 76-77, 79, 93-96).

51. In addition, paystubs issued to Plaintiffs almost invariably indicated that for any given period of time, Plaintiffs were actually paid far lesser hours than those hours reported by Defendants on their computerized timesheets. Moreover, the computerized timesheets for each Plaintiff would contain a handwritten number of hours written by Louis Vecchia himself indicating the hours actually paid to the Plaintiff by check for that period of time.

52. Moreover, given the presence of Louis Vecchia's handwriting on all or most of Defendants Suffolk Paving and also Suffolk Asphalt's weekly timesheets that were exhibited during his deposition, Louis Vecchia conceded that he would review the computerized weekly timesheets every week in the process of processing Plaintiffs' payroll checks. (L. Vecchia Tr. at 409-410). In

facts, all the weekly timesheets pertaining to Suffolk Asphalt and Suffolk Paving contained Louis Vecchia's handwriting. See below.

53.  As stated below, when confronted with the fact that Plaintiffs' paychecks almost always indicated payment for hours that were far less than the hours Defendants reported that Plaintiff had worked during that week, Louis Vecchia testified that any missing hours would be paid to the Plaintiffs in the form of a cash payments, and that these cash payments would not be recorded on the paystubs but rather in "daily agenda book" or other records.

54.  Moreover, Louis Vecchia testified that Suffolk Paving did not retain copies of its own computer-generated timesheets for all its employees. (L. Vecchia Tr. at 411-412).

55.  Note that Plaintiffs retained only a minor portion of their handwritten weekly timesheets as they usually lacked means to retain copies. However, all the copies they did retain were for periods of time during 2009.

56.  For example, Defendants reported that Rodriguez had worked 53 hours during the week 5/14/09-5/20/09, while his paystub indicated that he was paid for only 41 of those hours.[2] Louis Vecchia claimed that the remaining **ten hours** were paid to Rodriguez in cash. (Ex. 9; L. Vecchia Tr. at 146-150).

57.  Defendants reported that Rodriguez had worked 30 hours during the week of 6/25/09-7/1/09, while his corresponding paystub indicated that he was paid for only 20 of those hours. Louis Vecchia claimed that the remaining **ten** hours were paid to Rodriguez in cash or made up to him the following week. (Ex. 10; L. Vecchia Tr. at 158-160).

58.  Defendants reported that Rodriguez had worked 40 hours during the week of 7/9/09-7/15/09, while his corresponding paystub indicated that he was paid for only 24 of those hours.

---

[2] Plus two hours of "grease time" that were paid at a reduced hourly rate.

Louis Vecchia claimed that the remaining **16** hours were paid to Rodriguez in cash. (Ex. 11; L. Vecchia Tr. at 160).

59.     Defendants reported that Rodriguez had worked 26 hours during the week of 7/16/09-7/22/09, while his corresponding paystub indicated that he was paid for 24 of those hours, plus 1.5 hours of "grease time." The shortfall for this week was minor. (Ex. 12; L. Vecchia Tr. at 160-161).

60.     Rodriguez indicated on his handwritten timesheet that he had worked 49 hours during the week 8/27/09-9/2/09.[3] (Ex. 13). Defendants' weekly timesheet underreported Rodriguez's hours for that period as 32 hours, while his corresponding paystub indicated that Rodriguez was paid for 32 of those hours at his regular wage rate and for 9 hours at an overtime rate. When asked to explain why the hours reported by Defendants on its computer-generated weekly timesheet is different to those reported by Rodriguez himself, Louis Vecchia offered the following differing explanation: that Rodriguez's timesheet was "vague" and "invalid" because one entry indicates that Rodriguez ended work at 10PM, which per Vecchia that must be false as it was "dark," and there was no lunch time deducted and the job name was left blank. (Ex. 13; L. Vecchia Tr. at 161-163).

61.     Rodriguez indicated on his handwritten timesheet that he had worked 20 1/2 hours during the week 7/23/09-7/29/09. (Ex. 14). Defendants' weekly timesheet underreported Rodriguez's hours for that period as 18 hours, while his corresponding paystub indicated that Rodriguez was paid for 16 of those hours at his regular wage rate, for 1 hour at an overtime rate and 1 hour for "grease time." (Ex. 14; L. Vecchia Tr. at 163-164).

---

[3] The date is clearly reported by Rodriguez using the international and Hispanic custom of day, month, year.

62. Rodriguez indicated on his handwritten timesheet that he had worked 33 1/2 hours during the week 9/10/09-9/16/09. (Ex. 15). Defendants' weekly timesheet claimed that Rodriguez had worked only 24 hours, while his corresponding paystub indicated that Rodriguez was paid for 32 hours at his regular wage rate, and 2 hours for "grease time." Vecchia claimed some of the 32 hours paid to Rodriguez must have been payment for past unpaid hours. (Ex. 15; L. Vecchia Tr. at 164-165).

63. Rodriguez indicated on his handwritten timesheet that he had worked 51 1/2 hours during the week ending 9/23/09. (Ex. 16). Defendants' weekly timesheet underreported Rodriguez's hours for that same period as only 40 hours, while his corresponding paystub indicated that Rodriguez was paid for 40 of those hours at his regular wage rate, 3 hours at an overtime rate and 2.5 hours for "grease time." Vecchia testified that Rodriquez was not paid his full 51 ½ hours as Rodriguez had failed to take off lunch time and had failed to account for grease time. Vecchia testified that when he indicated in his own handwriting on Defendants' weekly computerized timesheets what the Plaintiffs were to be paid any given week, he would not review Plaintiffs' own handwritten timesheets that reported their hours. (Ex. 16; L. Vecchia Tr. at 166-169).

64. Defendants' weekly timesheet reported that Rodriguez worked 24 hours for the period 9/24/09-9/30/09 hours (despite having only worked 3 days during the week, presumably due to weather), while Vecchia's handwriting on the timesheet and the corresponding paystub indicated that Rodriguez was paid for 16 of those hours at his regular wage rate. Vecchia claimed that the missing eight hours were paid to Rodriguez in cash. (Ex. 17; L. Vecchia Tr. at 170-174).

65. Defendants' weekly timesheet reported that Rodriguez had worked 32 hours during the period 10/1/09-10/7/09, while Vecchia's handwritten annotations and the corresponding paystub indicated that Rodriguez was paid for only 16 of those hours at his regular wage rate and one hour

for "grease time." Vecchia claimed the missing 16 hours (approximately $723) were paid to Rodriguez in cash. (Ex. 18; L. Vecchia Tr. at 174-175).

66.     Rodriguez indicated on his handwritten timesheet that he had worked 44 1/2 hours during the week 10/15/09-10/21/09 (Ex. 19). Defendants' weekly timesheet underreported Rodriguez's hours for that period as 32 hours, while Vecchia's handwritten annotations and the corresponding paystub indicated that Rodriguez was paid for 40 hours at his regular wage rate and 2.5 hours of "grease time" but no overtime. (Ex. 19; L. Vecchia Tr. at 175-176).

67.     Rodriguez indicated on his handwritten timesheet that he had worked 53 ½ hours during the week 8/6/09-8/12/09 (Ex. 20). Whereas, Defendants' weekly timesheet underreported Rodriguez's hours for that period as 40 hours, while his corresponding paystub indicated that Rodriguez was paid for 40 hours at his regular wage rate, one hour at the overtime rate and 2.5 hours of "grease time." (Ex. 20; L. Vecchia Tr. at 177-180).

68.     Defendants reported that Plaintiff Pracelis Mendez ("Mendez") had worked 24 hours during the week of 3/26/09-4/1/09, whereas his corresponding paystub indicated that he was paid for only eight of those hours at his regular hourly rate and ½ hour of "grease time." Louis Vecchia claimed that the missing 15 1/2 hours were paid to Mendez in cash. (Ex. 21; L. Vecchia Tr. at 183-186).

69.     Mendez indicated on his handwritten timesheet that he had worked 41 hours during the week 7/23/09-7/29/09 (Ex. 22). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 32 hours, while his corresponding paystub indicated that Mendez was paid only for 8 hours at his regular wage rate and 0.5 hours of "grease time." Vecchia claimed that Mendez was paid 24 hours in cash, i.e., approximately $1085. (Ex. 22; L. Vecchia Tr. at 188).

70. Mendez indicated on his handwritten timesheet that he had worked 54.5 hours during the week 7/30/09-8/5/09 (Ex. 23). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 40 hours, while his corresponding paystub indicated that Mendez was paid for 40 hours at his regular wage rate and 1 hour of overtime and 2.5 hours of "grease time." (Ex. 23; L. Vecchia Tr. at 189).

71. Mendez indicated on his handwritten timesheet that he had 53.75 worked hours during the week 8/6/09-8/12/08, including the job titles and locations. (Ex. 24). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 40 hours, while his corresponding paystub indicated that Mendez was paid for 40 hours at his regular wage rate and 3 hours of overtime and 2.5 hours of "grease time." (Ex. 24).

72. Mendez indicated on his handwritten timesheet that he had worked 58.5 hours during the week 8/13/09-8/19/09. (Ex. 25). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 40 hours, while his corresponding paystub indicated that Mendez was paid for 40 hours at his regular wage rate and 2 hour of overtime and 2.5 hours of "grease time." (Ex. 25).

73. Mendez indicated on his handwritten timesheet that he had worked 65.75 hours during the week 8/20/09-8/26/09. (Ex. 26). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 48 hours, while his corresponding paystub indicated that Mendez was paid for 40 hours at his regular wage rate and 7 hours of overtime and 2.5 hours of "grease time." (Ex. 26).

74. Mendez indicated on his handwritten timesheet that he had worked 52 hours during the 9/3/09-9/9/09 week (Ex. 27). Whereas, Defendants' weekly timesheet underreported Mendez's hours for that period as 40 hours, while his corresponding paystub indicated that Mendez was paid

for only 24 hours at his regular wage rate and 1.5 hours of "grease time." Vecchia claimed that he paid Mendez cash during this week to make up the shortfall in his hours because Mendez threatened to resign unless he was paid his hours. (Ex. 27; L. Vecchia Tr. at 192).

75.     Mendez indicated on his handwritten timesheet that he had worked 63 hours during the period 9/17/09-9/23/09. (Ex. 28). Mendez also indicated on his timesheet "I dont [sic] want cash I want check." Id. Whereas Defendants' weekly timesheet underreported Mendez's hours for that period as 48 hours, while his corresponding paystub indicated that Mendez was paid for only 32 hours at his regular wage rate and 2 hours of "grease time." Vecchia claimed he paid 32 hours of wages to Mendez by check and an additional 16 hours in cash. Vecchia stated that Mendez had told him on "once or twice" that he did not want to receive cash payments. Vecchia (Ex. 28; L. Vecchia Tr. at 193-194).

76.     Mendez indicated on his handwritten timesheet that he had worked 52.7 hours during the period 9/24/09-9/30/09, including 12.7 hours that were supposed to be paid at the prevailing wage rate (according to his timesheet). (Ex. 29). Whereas Defendants' weekly timesheet underreported Mendez's hours for the same period as 40 hours, while his corresponding paystub indicated that Mendez was paid for only 40 hours at his regular wage rate and 2.5 hours of "grease time." (Ex. 29).

77.     Mendez indicated on his handwritten timesheet that he had worked 24 regular hours and 8.5 overtime hours during the period 10/1/09-10/7/09[4]. (Ex. 30). Whereas Defendants' weekly timesheet underreported Mendez's hours for the same period as 24 hours, while his corresponding paystub indicated that Mendez was paid for only 16 hours at his regular wage rate and one hour of

---

[4] According to certain provisions of the CBA in place for Union 138 (of which Mendez was a member), Mendez was entitled to overtime hours for all hours worked in excess of eight hours per day, in addition to overtime for hours worked in excess of forty hours per week. (*See,* Ex. 7).

"grease time." (Ex. 30). Vecchia claimed that Mendez was paid for seven hours of wages in cash. (L. Vecchia Tr. at 210).

78.     Mendez indicated on his handwritten timesheet that he had worked 24 regular hours and 6.5 overtime hours during the period 10/8/09-10/14/09. (Ex. 31). Whereas Defendants' weekly timesheet underreported Mendez's hours for the same period as just 24 regular hours, while his corresponding paystub indicated that Mendez was paid for only 24 hours at his regular wage rate and 1.5 hours of "grease time" and he was denied his 6.5 hours completely, not only just at the overtime rate. (Ex. 31).

79.     Mendez indicated on his handwritten timesheet that he had worked 16 regular hours and 8.5 overtime hours during the period 10/22/09-10/28/09. (Ex. 32). Whereas Defendants' weekly timesheet underreported Mendez's hours for the same period as just 16 regular hours, while his corresponding paystub indicated that Mendez was paid for only 16 hours at his regular wage rate and 1 hour of "grease time" and he was denied his 8.5 hours completely, not only just at the overtime rate. (Ex. 32).

80.     Mendez indicated on his handwritten timesheet that he had worked 16 regular hours and 3 overtime hours during the period 10/29/09-11/4/09. (Ex. 33). Whereas Defendants' weekly timesheet underreported Mendez's hours for the same period as just 16 regular hours, while his corresponding paystub indicated that Mendez was paid for only 16 hours at his regular wage rate, 1 hour of overtime and 1 hour of "grease time." (Ex. 33).

## Louis Vecchia Contradicts His Prior Testimony About Plaintiffs' Unpaid Hours During the Second Day of His Deposition.

81.     Defendants' weekly timesheet reported that Plaintiff Escalante had worked 44 hours for the period 7/16/09-7/22/09, while his corresponding paystub indicated that Escalante was paid for only 34 hours at his regular wage rate. (Ex. 34). When confronted with this disparity when his

deposition was resumed for a second day on December 30, 2011, Louis Vecchia could not recall why Escalante was only paid for 34 hours when the timesheet reported he had worked 44 hours, which was in stark contrast to his prior testimony provided on June 3, 2011 that any disparity in hours were mostly due to cash payments that were not reported on the paystubs. (L. Vecchia Tr. at 341-345).

82.    Defendants' weekly timesheet reported that Plaintiff Escalante had worked 45 hours for the period 7/23/09-7/29/09, while his corresponding paystub indicated that Escalante was paid for only 32 hours at his regular wage rate. (Ex. 35). Again, Louis Vecchia could not explain why Escalante was only paid for 32 hours for this pay period. (L. Vecchia Tr. 350-352).

83.    Defendants' weekly timesheet reported that Plaintiff Escalante had worked 32 hours for the period 9/24/09-9/30/09, while his corresponding paystub indicated that Escalante was paid for only 16 hours at his regular wage rate. (Ex. 36). Again, Louis Vecchia could not explain why Escalante was only paid for 16 hours for this pay period. (L. Vecchia Tr. 353-354).

84.    Defendants' weekly timesheet reported that Plaintiff "Victor" (i.e., Nelson Quintanilla) had worked 32 hours for the period 3/26/09-4/1/09, while his corresponding paystub indicated that N. Quintanilla was paid for only 24 hours at his regular wage rate. (Ex. 37). Again, Louis Vecchia could not explain why N. Quintanilla was only paid for 24 hours for this pay period. (L. Vecchia Tr. 354-355).

85.    Defendants' weekly timesheet reported that Plaintiff N. Quintanilla had worked 48 hours for the period 5/14/09-5/20/09, while his corresponding paystub indicated that was paid for 40 hours at his regular wage rate and 6 hours at an overtime rate. (Ex. 38). Again, Louis Vecchia testified that he could not explain why N. Quintanilla was paid for lesser hours than were reported on Defendants' weekly timesheet. (L. Vecchia Tr. 356-357).

86. An additional 46 exhibits were exhibited and shown to Louis Vecchia that, almost without exception, reported that Plaintiffs were paid wage checks for hours that were lower - often far lower – than those hours reported on the corresponding timesheets for the same period throughout 2009. (Exs. 39-85). And with respect to almost every wage and time report shown to Louis Vecchia, he testified that he could no longer explain why the Plaintiffs in question were paid for lesser hours than those reported on their weekly timesheets; with respect to a minor portion of the wage documents, Louis Vecchia claimed that certain Plaintiffs had been overpaid on prior weeks with respect to some periods of time, or he claimed to be confused or unable to read or interpret the exhibits correctly or he claimed to be purely speculating as to the reasons for the underpayment. (L. Vecchia Tr. at 365, 372, 374-375, 379-380, 382, 385-390, 392-393, 399-400).

87. Strangely, given his prior testimony, on one occasion, Louis Vecchia testified that one underpayment made to Plaintiff Fajardo may have been due to somebody having made a "mistake" on his time. (Ex. 65; L. Vecchia Tr. at 395-396).

88. During discovery in this action, the former co-counsel in this case, Lauren Goldberg, and I scanned copies of all of Defendants' documents that were seized by the Suffolk County District Attorney's Office and among these documents there were no documents that indicated supplemental wage payments issued to Plaintiffs during their employment, in any form, cash or otherwise, nor were the "daily agenda books" among the documents in the possession of the District Attorney.

89. Nor did Defendants ever produce records establishing that Plaintiffs acknowledged receipt of these extensive and regular cash wage payments.

Dated: New York, New York
April 5, 2013

                              **LAW OFFICES OF IAN WALLACE, PLLC**

                                                /s/

Respectfully submitted by:   _____
                                   Ian F. Wallace (IW: 3100)
                                   *Attorney for Plaintiff*
                                   501 Fifth Avenue, 19th Floor
                                   New York, New York 10017
                                   Tel: (212) 661-5306