**LAW OFFICES OF IAN WALLACE, PLLC**
501 FIFTH AVENUE · 19TH FLOOR
NEW YORK, NEW YORK 10017

TEL: (212) 661-5306                                                                                           FAX: (646) 349-5308

June 3, 2019

**VIA ECF**
Magistrate Judge A. Kathleen Tomlinson
United States District Court, EDNY
Long Island Courthouse,
100 Federal Plaza
Central Islip, New York 11722

      Re:    *Quintanilla, et al. v. Suffolk Paving Corp., et al* ; Civil Action No. 09 Civ. 5331

Hon. Magistrate Tomlinson:

      I represent the Plaintiffs in this action.

      The parties jointly submit this letter motion seeking approval of the enclosed settlement agreement ("Settlement Agreement"). A copy of the Parties' Proposed Settlement is attached hereto as "Exhibit 1." The Parties will execute the Settlement Agreement following Judicial Approval. The Settlement Agreement will not become "Effective" until: 1) it receives Judicial Approval from Your Honor consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 2015 U.S. App. LEXIS 13815 (2d Cir. 2015); and 2) the Settlement Agreement is executed by each and every Plaintiff party to the Agreement.

      For the reasons set forth in detail below, we request that the Court review and approve the parties' proposed Settlement Agreement and retain jurisdiction over this matter until Plaintiff's counsel files an executed stipulation of dismissal with prejudice.

## PROCEDURAL AND FACTUAL HISTORY

      In the complaint filed on December 7, 2009 [DN 1], the sixteen Plaintiffs asserted they were employed by Defendants over an extended period of time as paving laborers, operating engineers and/or mechanics. Plaintiffs sought to recover unpaid overtime wages, spread-of-hours pay, liquidated and statutory damages, interest and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") and the Wage Theft Prevention Act ("WTPA").

      The sixteen (16) Plaintiffs, namely, Nelson Quintanilla, Alejandro Amaya, Alex Amir Arevalo, Maynor Fajardo, Walter Garcia, Jose L. Martinez, Pracelis Mendez, Osmar W. Pagoada, Javier Quintanilla, Edvin Rivera, Carlos Escalante, Kevin Galeano, Lerly Noe Rodriguez, Jose Vega Castillo, Juan Quinteros, and Marcos Tulio Perez (collectively, the "Plaintiffs") allege that Defendants Suffolk Paving Corporation and

Suffolk Asphalt Corporation, through owners and operators Louis Vecchia, Christopher Vecchia, and Helene Vecchia (collectively, the "Defendants"), failed to pay them their full wages, including overtime compensation, and falsely reported the hours they worked in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

On October 5, 2018, Defendants filed their answer to the complaint. [DN 58]. In it, Defendants denied all material allegations in the Complaint and asserted several affirmative defenses.

On September 21, 2012, Plaintiffs filed a third amended complaint [DN 115], in which, among other things, several of these Plaintiffs further claim that they complained about these unlawful practices and were consequently retaliated against by being terminated from employment, having their unemployment benefits denied, and being subjected to retaliatory litigation in state court. In addition, Plaintiffs allege that they were not compensated with the prevailing wage on various jobs as mandated by the NYLL[1].

Defendants filed a summary judgment motion seeking dismissal of all of Plaintiffs' claims. By decision, dated February 22, 2019 [DN 169], the Court denied Defendants' motion except that it dismissed Plaintiffs' claims for breach of contract, *quantum meruit* and unjust enrichment for their unpaid overtime as these claims were preempted by the FLSA. Id, p. 84. The court permitted Plaintiff's breach of contract claims as they related to payment of straight wages. Id. The court also dismissed Carlos Escalante and Jose Castillo's unlawful retaliatory discharge claims. Id.

The trial in this action commenced on April 8, 2019, with the jury selection, opening statements and Plaintiffs' case in chief with the examination of Carlos Escalante, Jose Martinez and Edvin Rivera. On April 11, 2019, the parties met with Magistrate Lindsay who conducted a settlement conference. After hearing from both sides, the Magistrate Judge recommended that the parties agree to settle Plaintiffs' claims for $300,000.[2] The following day, Plaintiffs' counsel communicated to the court that the Plaintiffs had all agreed to settle the lawsuit for $300,000.

Pursuant to the Court's Order, dated April 13, 2019, and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties submit this Joint Letter-Motion requesting that the Court approve the settlement. The parties also request that the

---

[1] Alternatively, the Plaintiffs also asserted breach of contract, *quantum meruit* and unjust enrichment for their unpaid wages. By decision, dated February 22, 2019, the Court dismissed these claims except for the breach of contract claims as they related to payment of straight wages. [DN 169].

[2] With the exception of Jose Castillo's claims who pursuant to this court's order was the subject of an application for a voluntary dismissal of his Federal claims in order to pursue his remaining claims in State Court [DN 202]. The court has yet to rule on that letter motion.

court retain jurisdiction over the action until Plaintiff files a fully executed stipulation of dismissal with prejudice.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely whether Plaintiffs worked overtime hours and the number of hours that he worked per workweek. These issues hinge on numerous disputed facts that would have to be resolved by a trier of fact at trial. Depending on which facts are credited, Plaintiffs' potential damages could be significantly reduced.

Whether Plaintiff performed overtime hours and the extent of those hours is an issue of fact that would need to be resolved at trial. The Plaintiffs claimed they worked approximately 52-55 hours per week[3] for which they were partially paid straight wages and were rarely compensated for their overtime rate. Defendants maintain that Plaintiffs were paid appropriately for all hours worked, including overtime pay for hours worked in excess of forty (40) hours per week and prevailing wage rates when applicable.

Plaintiffs allege the following dates of employment:

Alejandro Amaya was hired by Suffolk Paving Corp. in 2005 and worked until part of 2010.[4] Mr. Amaya did not assert retaliatory discharge claims.

Alex Amir Arevalo was hired in Feb 15th, 2006[5] and worked for Defendants until August 25, 2009. Mr. Arevalo did not assert retaliatory discharge claims.

Carlos A. Escalante was employed as a laborer from March 22, 2001 through December 23, 2002; from March 17, 2004 through December 15, 2004; and from March 26, 2006 to December 10, 2009. *See* Complaint, ¶ 45

Edwin Rivera worked from May 20, 2003 until 2009. *See* Complaint, at ¶ 41

Javier Quintanilla worked for Defendants from August 7, 2002 until May 5, 2005 and resigned after Defendants would not give him a raise. Complaint, ¶ 40.

Jose Martinez worked for Defendants from June 6, 2004 until July 15, 2008. Complaint, ¶ 37.

Kevin Galeano worked for Defendants from Nov 15, 2007 until November 2010. Complaint, ¶ 43.

---

[3] Plaintiffs' testified during their testimony regarding their hours and that varied.
[4] See Third Amended Complaint, ("Complaint") [DN 115], ¶ 33.
[5] Complaint, at ¶ 34 ("Plaintiff Alex Amir Arévalo was employed as a mechanic for Suffolk Paving and/or Suffolk Asphalt and/or its related entities from February 15, 2006 to August 25, 2009.) Alex stated in his deposition that he was fired in 2009.

Magistrate Judge A. Kathleen Tomlinson
June 3, 2019

  Lerly Rodriguez worked for Defendants from April 15, 2002 through January 12, 2005; and from April 19, 2007. Complaint, ¶ 42.

  Marcos Tulio Perez worked for Defendants from mid-2003 until 2009. Complaint, ¶ 47.

  Maynor Fajardo worked for Defendants from 1998 until September 15, 2009. Complaint, ¶ 35.

  Nelson Quintanilla worked from 1998-2003; from March, 2004 until June, 2006; and from March, 2007 until August, 2011. Complaint, ¶ 32

  Osmar Pagoada started working for Defendants in October 23, 2008 and worked through Dec, 2009. Complaint, ¶ 39. Mr. Pagoada claims that in or around March 2010, Defendants did not permit him to return to work.

  Pracelis Mendez worked for Defendants from 2001 until November, 2009. Complaint, ¶ 38

  Juan Quinteros worked for Defendants from July 2008 until 2011. Complaint, ¶ 46.

  Walter Garcia worked for Defendants from 2000 until August 2003; from June 2005 until 2007 and from April 2008 until December 17, 2009. Complaint, ¶ 36

**The Proposed Settlement Amount is Fair and Reasonable**

  In order for the parties' proposed Fed. R. Civ. P. 41(a)(1)(A)(ii) stipulation of dismissal to take effect, the Court must scrutinize and approve the Settlement Agreement. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 2015 U.S. App. LEXIS 13815 (2d Cir. 2015). The Court should approve the Settlement so long as it "reflects a 'reasonable compromise of disputed issues [rather] than mere waiver of statutory rights brought about by an employer's overreaching." *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (*quoting Lynn's Foods Stores, Inc., v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also *Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

  According to *Beckert v. Rubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015), "in determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product

of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion."

While the number of hours is highly contested, Plaintiffs' total estimated damages varied widely and included pay for prevailing wages. In support of their claims, certain Plaintiffs had kept weekly timesheets for a restricted period in 2009.[6] However, those timesheets were incomplete and for a very short period of time. These timesheets indicate that during the time in question, Plaintiff's worked on average 51 hours per week.

Finally, Plaintiffs do not claim that Defendants owed them overtime after the lawsuit was commenced in 2009.

In contradiction to those timesheets, Defendants point to various municipal inspection reports that indicate Plaintiffs did not work the hours they claim. Defendants also produced a significant amount of payroll records and certified payroll records. Defendants' document production demonstrates that the Plaintiffs were paid overtime wages on the uncommon occasions that they worked in excess of forty (40) hours per week. Defendants' document production also shows that Plaintiffs were paid prevailing wage rates when they performed work on "public works" projects.

Certain of Plaintiffs' deposition and trial testimony was contradictory, which may have further undermined Plaintiffs' claims for damages. For example, Carlos Escalante testified at trial he was not owed prevailing wages except for several hours in December 2004 that led him to resign his position only to seek rehire the following year. This is clearly inconsistent with the allegations in the complaint, his prior testimony and the likely and expected testimony from the other remaining Plaintiffs. Other examples of inconsistent testimony included the inability to perform paving work in inclement weather or freezing temperatures, the breaks and meal periods afforded to the Plaintiffs each day, time spent traveling to and from job sites, and Defendants' policies regarding travel time at the beginning and end of each work day.

Of the total settlement recovery, $102,600 will be paid to Plaintiffs' counsel for attorneys' fees and costs (of which $94,600.00 is for attorneys' fees and $8,000.00 is for costs incurred by Law Offices of Ian Wallace, PLLC in the litigation of this action).

After deducting attorneys' fees and costs, the Settlement Amount is reasonable given the amount of Plaintiffs' overtime pay claims.

The Parties strongly dispute the number of hours that Plaintiffs worked per workweek and by Plaintiffs' own admission their hours varied greatly and they retained only a minor portion of their time and wage records. Further, one of the major issues concerned Plaintiffs claim that they should be compensated for travel time to and from the job site each morning. Plaintiffs allege they should have been compensated for time

---

[6] Pracelis Mendez kept approximately 20 weekly timesheets that indicated overtime hours worked.

spent traveling to and from the job site at the beginning and end of each day. Specifically, Plaintiffs seek compensation for time spent once they reported to Defendants' facilities each morning. This travel time accounts for the majority of Plaintiffs' claims, as various Plaintiffs allege between ten (10) to fifteen (15) hours of unpaid travel time compensation each week. Defendants maintain that Plaintiffs are not entitled to compensation for travel time as they were not required to report to Defendants' facilities. Rather, Plaintiffs, if unable to obtain independent transportation, would be provided with free transportation to and from their job site each day by the Defendants. Accordingly, if unsuccessful on their claim for entitlement to travel time compensation, Plaintiffs amount of recovery would be substantially limited, and in some cases, completely eliminated.

Considering the above factors, Plaintiff's counsel believes that this is an excellent result, and, as such, it should be approved as a fair settlement. *See, Meigel v. Flowers of the World NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve settlement."). Despite the potential risks of litigation, under this Settlement Agreement, Plaintiff will receive, separate and distinct from attorneys' fees, substantial settlement proceeds. It should also be noted that the Settlement Agreement has been the result of arm's-length negotiations between experienced employment attorneys. Further, this resolution was recommended by Magistrate Lindsay, whom spent a considerable amount of time conferring with the Parties and was instrumental in reaching the Agreement.

Defendants first attack Plaintiffs' credibility and claim that a jury would be more likely to believe them given their changing positions and given expected corroboration of Defendants' position by current and former employees of Defendants.

If this case continues, the trier of fact would have to resolve these factual disputes at a trial based on the conflicting testimony of witnesses from both sides. Under almost all scenarios, the settlement amount, even after deducting attorneys' fees and costs, accounts for a large part of Plaintiffs' claimed unpaid overtime wages.

The terms of the Settlement Agreement are in accordance with the decision of *Cheeks v. Freeport Pancake House, Inc.*, No. 14-299 (2d Cir. 2015). The settlement allows for the Settlement Agreement to be publicly filed for the purpose of judicial review for fairness. The Settlement Agreement does not contain any confidentiality or non-disparagement provisions allowing Plaintiff to make truthful statements relating to their recovery amount, Defendants' pay practices as well as, his experience litigating this action in accordance with *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015).

To protect Plaintiffs against a potential default, the Parties jointly request that the Court retain jurisdiction over this matter until Plaintiffs' attorney file an executed

stipulation of dismissal with prejudice, thereby guaranteeing that all payments to Plaintiff were made and cleared. *See id,* Settlement Agreement, ¶ 6 (b).

Pursuant to the retainer agreement between Plaintiff and counsel, Ian Wallace's fees are less than 33.3% of the Settlement Payment plus reimbursement of costs totaling $8000 incurred in the prosecution of this action.[7] *See e.g., In re Lawrence,* 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written"); *Calle v. Elite Specialty Coatings Plus, Inc.,* No. 13 Civ. 6126 (NGG) (VMS), 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.")

It bears noting that Ian Wallace's reasonable attorneys' fees to date approximately $269,500 (at the hourly rate of $385).[8] As such, we believe that the contingency fee in this case is fair and reasonable, particularly because it is less than the lodestar and because Plaintiffs accept it after having reviewed every term of the Agreement in Spanish.

We thank the Court for its time and consideration of this matter. If the Court needs any additional information for purposes of *Cheeks* review, please feel free to contact us.

Respectfully submitted,

Ian F. Wallace

Attachments (Exhibit 1)

---

[7] This includes deposition costs exceeding $5000 and also the fees paid to the Spanish interpreter of $3200, filing fee and service of process fees, subpoenas and affidavits.
[8] Ian Wallace's contemporaneous billing records are available for the Court's *in camera* review if necessary.